WHITNEY *vs.* THE CITY OF NEW HAVEN.

Where a contract for the purchase of real estate for a public purpose, as a highway, railroad, canal, park, &c., remaining altogether unexecuted, is subsequently abandoned by the purchaser, and the vendor retains possession of the estate, agreed to be sold, his remedy is at law, and not in equity.

The city of N. H. agreed to buy of the plaintiff certain lands, and as much of the water of Mill river, as should be necessary to supply said city with pure water, for the consideration of $50,000, and of the covenant to construct a costly dam, and a canal, to convey, for the plaintiff's use, the surplus water of said river. The plaintiff, having never parted with the possession of his property, brought his bill, in equity, to enforce the specific performance of such agreement. Held, that he had the means of complete redress at law, and that such bill must be dismissed.

THIS was a bill in chancery, brought to the superior court for New Haven county, April term, 1854, to enforce the specific performance of a contract. The material facts, alleged in the bill, were the following:

The general assembly of this state passed an act, in 1853, entitled " An Act to alter the Charter of the City of New Haven, to provide the means for the extinguishment of fires therein, and for supplying its inhabitants with pure water." After said act had been accepted by said city, as a part of

its charter, a board of water-commissioners was constituted, under its provisions, to exercise the powers conferred thereby, among which was "the power to make contracts with the proprietors of any estate, real, personal, or mixed, or of any franchise, right, or privilege, required for the purposes of the act, which contracts, so made, shall be obligatory on said city, and the other party to the same," and "to direct the amount of bonds to be issued for the purposes of the act; to prescribe the form thereof, and direct the times, and places, at which the same shall be payable;" and generally, to exercise all the powers vested in the city by said act.

The plaintiff was the owner of certain real estate, water-privileges and franchises, mentioned in the bill, and the same were required for the purposes of the act; and in view of the powers conferred upon the commissioners, he entered into an agreement with them, they acting in behalf of the city, for the sale and conveyance to said city, of his property, and water-privileges, for the consideration of $50,000, and of the covenant, on their part, for the construction of their water-works, by means of a dam and a canal, built in such manner, that the plaintiff should, at all times, have the benefit of the surplus water of the premises, remaining, after the wants of the city were supplied. So much of said consideration, as amounted to $27,500, was to be paid to the plaintiff, in bonds of said city, issued at a premium of ten per cent., and the remainder thereof was to be paid in cash.

Pursuant to the requirement of the contract, the plaintiff executed, and tendered to the city, a deed of the property, agreed to be conveyed, prepared by their counsel, which deed they declined to accept, refusing to perform, on their part, the stipulations contained in the agreement, or any of them, but not pretending that the plaintiff had failed, in any respect, to comply with the agreement, on his part.

To this bill the defendants filed a general denial, and also a further answer, alleging, so far as the matters embraced therein were sustained by the court, that the contract with

the plaintiff was entered into, under the act of 1853, with a view to the introduction of water into the city of New Haven ; that, after the making of the contract, and the tender, and refusal, of the plaintiff's deed, and after the bringing of his bill for the specific performance of the contract, the general assembly passed the act of 1854, conferring on two-fifths of the freemen of the city of New Haven, the power of repealing the act, under which the contract was made, but with a proviso to the act, that such repeal should not, in any way, affect the present suit, or, in any way, impair the obligations imposed by said contract between the plaintiff and the board of water-commissioners, or any right vested in the plaintiff thereby. At a meeting warned and held, in accordance with the provisions of said act, more than two-fifths of the ballots cast, were in favor of such repeal.

The court found the allegations in the bill to be true, except that no evidence was adduced to show the value, to the defendants, of the property specified in the contracts therein set forth, or of the damage sustained, by the plaintiff, by reason of the non-performance thereof by the defendants. The court also found the allegations aforesaid, in the defendants' answer, to be true.

The case was reserved for the advice of this court, as to what decree ought to be passed.

*Baldwin*, and *R. I. & C. R. Ingersoll*, and *Blackman*, for the plaintiff.

1. The general principle which governs courts of equity is, that what is agreed to be done, for a valuable consideration, shall be considered as done ; and consequently, after a contract has been entered into for the sale of land, the vendor is regarded, in equity, as a trustee of the land for the purchaser, and he of the money for the vendor. Atkinson on Tit., 32. 2 Sto. Eq., 789. When either party refuses to complete the sale, the other has two remedies. He may sue at law, for dam-

ages, for breach of the contract, or file his bill for specific performance.   And when the contract is entered into by a competent party, and is, in its nature and circumstances, unobjectionable, it is as much of course, in equity, to decree a specific performance, as it is to give damages at law.   Atkinson on Tit., 51, and 168.   2 Sto. Eq., § 751.   4 Pet., 311, 328.   The exceptions are, when by reason of fraud, mistake, or surprise, uncertainty, great hardship, want of mutuality, or unreasonable delay, it would be inequitable to enforce the contract specifically.   Atkinson on Tit., 84, 151, 154, 156.   The contract, which the plaintiff seeks to enforce, falls within none of the exceptions to the general rule.

2.   There is no pretence that anything has been done or omitted, by the plaintiff, to justify a repudiation of the contract; and no evidence to show it to be a hard bargain, or a bad bargain for the city, or any reason why it should not be enforced.   The defendants answer, because the act of 1853, by the authority of which the contract was made, has since been repealed; and therefore the land and water privileges of the plaintiff are not needed by the city.   We deny, in the first place, the constitutionality or validity of the act of 1854, authorizing two-fifths of the citizens to abrogate the act of 1853, which had already been approved by a majority of the freemen of the city, and had become a part of its charter.   The constitution confers all legislative power on the general assembly.   What they enact can not, after it has become a law, be repealed, except by an act of legislation expressive of the judgment of the general assembly.   If it is competent for the legislature to give such a power to two-fifths, it must be equally within its power to give to one-fifth, or to one man even, the power to repeal the charter of the city.   But, the repealing act, (§ 4,) if it be one, not only reserves the plaintiff's rights, under his contract, but it expressly declares that nothing, therein contained, shall in any way affect this suit.   If, therefore, the plaintiff, in March, 1854, when he brought his bill, had a right to require a specific performance,

and a decree to enforce it, that right remains unaffected by the repeal.    How can the city invoke aid from the act to prevent the plaintiff from obtaining a decree, to which he would otherwise be entitled, when, by the very terms of the act, his rights are saved ?    If, then, there is nothing in the act of the legislature, which impairs the rights of the plaintiff, nothing remains for the defendants to rely on, but that the citizens have changed their minds, in regard to the contemplated improvement, since they made their contract with the plaintiff. It is just as important, just as feasible, just as necessary to the city now, as it was when undertaken in 1854.    And so far as this court can see, the change was from mere caprice. Hawkes v. Eastern Counties, R. R., 15 Eng. L. & E., 358.

3. It is said that it would be a great hardship, for the city, to be compelled to fulfil their contract, and that it will be impossible to do so, because the board of water-commissioners is abrogated by the repeal, and the city can have no use for the water, raised by the dam, which they have agreed to construct.    To this we reply, that so far as the plaintiff is concerned, he asks only what is important to him under the contract.    Whatever powers are needful, for that purpose, exist now, as much as before the repeal.   The city was not authorized to give up any power essential to his rights, under the contract.    15 E. L. & E. R.    1 Railw. Ca., 326, and 477.

Foster, and Dutton & Munson, for the defendants.

· The court should not decree a specific performance.

.· I. There is adequate remedy at law, and to grant it would therefore be contrary to the statute.    Stat. 1849, 468.    11 Eng. L. & E., 118.

The proper remedy is at law, because, 1. The principal compensation to the plaintiff, was to be $50,000, in bonds, and money would be better.    2. The ground of compensation is chiefly injury to, not the removal of, a water privilege. This is clearly a matter of damages.    3. It appears by the contract, that the plaintiff was not endeavoring to obtain a

new privilege. He already had the whole water-power. He was merely reserving a part, and therefore needs no relief in equity.

II. The contract was void.

The commissioners had no power to bind the city to build, or maintain, a dam: they had merely power, under the statute, to make compensation in some ordinary method, and not in a way which was hazardous, and likely to impose a heavy and lasting burden. *Gage* v. *New Market R. R. Co.*, 14 Eng. L. & E., 57.

III. If the contract was a valid one, the court would not use its compulsory powers, under the circumstances of the case at bar. 1. Decreeing specific performance is a question of discretion. *Meeker* v. *Meeker*, 16 Conn. R., 403. 15 Eng. L. & E., 598. 2. Specific performance will not be decreed. where it will occasion a waste of property. 2. Sw. Dig., 24. 3 Atk., 512. *Stuart* v. *London & N. W. R. R. Co.*, 11 Eng. L. & E., 112. Lord Cranworth, *id.*, 118. *Webb* v. *Directors London & Ports. R. R. Co.*, 9 Eng. L. & E., 249. 3. It will not be decreed, where there has been a great change of circumstances, so as to make it a hardship. *Perkins* v. *Wright*, 3 Har. & M. Ken., 326. 10 U. S. Dig., 162. 1 Iowa, 510. 15 Eng. L. & E., 359. 4. It is a settled rule in England, that, if a public object like a railway is given up, and the vendor is still in possession of the land purchased, specific performance will not be decreed. *Webb* v. *Directors London & Ports. R. R. Co.*, 9 Eng. L. & E., 249. *Stuart* v. *London & N. W. R. R. Co.*, 11 Eng. L. & E., 112. *Gooday* v. *Colchester & S. V. R. R. Co.*, 15 Eng. L. & E., 596, 598. 5. The court will not decree specific performance, where the object of the plaintiff is secondary, such as a room in a building, or a water-privilege from a canal, as it would be oppressive to the defendant, without a corresponding benefit to the plaintiff. 6. The building a bridge, dam, &c., will not be enforced.

IV. The provision in the repealing act does not affect any of the foregoing propositions. The city would abandon the project, without a repeal of the law of 1853.

V. The bill should be dismissed, as there is adequate remedy at law.

ELLSWORTH, J. The city of New Haven, on the 2d day of January, 1854, contracted to purchase, of Eli Whitney, certain lands, and so much of the water of Mill river, as should be found necessary to supply the city with pure water. Mr. Whitney has offered to perform the contract on his part, and has tendered his deed, prepared by the counsel of the city, which it is agreed, embraced the lands, waters and privileges, which he was to convey, and is itself entirely correct, and satisfactory. The defendants have refused to receive it, and have voted not to go on with the purchase, and, on their own account, have repudiated the contract, and decline to take any measures to carry it out, or pay the plaintiff the consideration, which he was to receive. Into the cause of this, it is not important for us to enquire. They have voted to abandon the water-works, and that is enough for the present purpose, preferring, as we suppose, if they are bound by the contract, to pay whatever damages a jury shall find that the plaintiff has sustained, rather than pursue a project which the citizens themselves have declared they do not desire to pursue, and the further pursuance of which, they believe, will unnecessarily aggravate their damage and loss, while it will not benefit the plaintiff beyond the money due him, which can be recovered by way of damages, at law. Mr. Whitney insists that the city shall go on, and shall specifically execute the contract as agreed, and he calls upon the court, in the exercise of a sound discretion, (for to that he, of course, appeals, in asking for its interposition,) to order the city to construct the water-works, so far as it concerns him, or, at least, to pay him the fifty thousand dollars.

The defendants resist the prayer of the bill, and urge, in

their defence, two considerations,—that there is not a valid contract, as set out by Mr. Whitney, in the bill, inasmuch as the water-commissioners had no power, or authority, under the vote of the city, to oblige the city to issue city bonds, or erect a permanent dam, thirty-three feet high, and a canal to accommodate the plaintiff's works. On the other hand, the plaintiff insists that the power and authority is ample, and that the water-commissioners have only carried out the vote of the city, in a manner alike reasonable and judicious, and that what they contracted for, or to perform, beyond the mere purchase of water, was incidental to the purchase and fair enjoyment of the water, and the mode of payment. We briefly allude to this objection at this time, because it does not become important to decide it in this suit. We place our decision on another and different ground, and, therefore, we do not mean to decide it. The other objection is this, that, allowing the contract with Mr. Whitney to be good and valid, a suit at law can be brought upon it, to recover the damages, and there is no occasion for specific execution; and further, specific execution would be exceedingly oppressive, if not tyrannical, toward the defendants. This objection, in our view, is entitled to much consideration, and is decisive of the plaintiff's bill.

Our statute, as well as common law, forbids a party, that can obtain complete redress at law, to seek redress by specific execution. True it is, that, as a general rule, where the purchaser of real estate can come into a court of equity, to obtain a deed of it, the vendor can come there to get his money, which was agreed to be paid, but the rule is not universally true, and it should not be applied, we think, where it will do unnecessary mischief to one of the parties. This is a case of that character. The plaintiff not only asks to recover his money, but he seeks to compel the city to construct, at a great expense, their water-works, with a dam thirty-three feet high, for an immense pond, or reservoir of water, with a canal, for surplus water, for the plaintiff's works;

or, if the plaintiff will be satisfied, as he may be, to take a decree only for the fifty thousand dollars, and not pursue the rest of his prayer, then, we say, that the remedy is unequal and oppressive, and will not leave the parties where they should be left, and where they will be left, after a recovery of damages, at law.    Is it not more equal and. just, that the plaintiff should recover his damages, whatever they may be, and retain his property, as it is, than to force the city to pay fifty thousand dollars, and go on with the water-works, whether they will use them or not; or, if the works are not to be constructed, to pay Mr. Whitney the fifty thousand dollars, and leave him, as they necessarily must do, in that case, in the undiminished enjoyment of the whole of this same property?  ˙The truth is, the city get nothing at all for the fifty thousand dollars, nor is the plaintiff to part with anything for it; under such circumstances, a court of equity, by granting the prayer of the bill, would, in our judgment, exercise anything but a wise and sound discretion.    It is not enough, in this court, for the plaintiff to say that he has fairly made, what proves to be, a favorable bargain, and that he now wants only the benefit of it, by means of specific execution.    The agreement, though good at law, is not, of course, to be enforced in a court of equity.

The general principles of equity, which govern cases like the present, are.too familiar to require from us any further comments, or the citation of authorities and cases.    They are to be found, and are abundantly illustrated, in the books read at the bar, and in many other treatises.    We entertain no doubt, that the law is, that where contracts are made for the purchase of real estate for public purposes, such as highways, railroads, canals, parks, and the like, but which contracts, being altogether executory, are abandoned, and the vendor remains in possession, he must seek his redress at law, and not in equity.    In *Webb* v. *The London & Portsmouth Railway Company*, 9 Eng. L. & E., 249, on appeal, the defendants had entered into an agreement to purchase certain lands, not

exceeding eight acres, for a proposed railroad, and to pay £4,500 for them, but which was not taken, though the defendants entered to make a survey, and estimate, and cut one tree, and the plaintiff was not otherwise disturbed in his possession and enjoyment; the court held, that the plaintiff was not entitled to a specific performance; their language is, "it is the plain doctrine of the court, that it is not upon every contract that the court will interfere to decree specific performance. It does so, to give more complete justice to a party, who seeks the aid of this court, where a contract has been entered into to purchase an estate. It may often happen that the mere legal remedy of recovering damages, for the non-performance of the contract, would afford inadequate relief, and, from the earliest time, it has been the doctrine of this court to interfere to make the party do what he has engaged to do, namely, convey the land he has agreed to sell," * * "but even in the case of a suit by a purchaser, if there be circumstances, rendering it unjust that the court should interfere, the court will not interfere in his favor; and I should say, much more readily will the court listen to an objection, that is made against a vendor seeking a specific performance; because of necessity the vendor can get complete redress at law," * * "but here it is admitted that what the contract amounts to is really this: a contract to pay five thousand five hundred pounds, to select eight acres of the plaintiff's land and take it from him, and for such land, and consequential damage, to pay the £4,500." The court, after stating the rule for finding the damages, resulting from a refusal by the defendants to take the land, proceed to say: "The amount of damages, to be calculated, will then, as I conceive, be a calculation made on the agreement, as to what, taking all the circumstances into consideration, will do justice, whereas, the relief that would be afforded in this court would be positive injustice. It would be giving to this gentleman £4,500 as the purchase money for that which they had not taken, and which I believe they never now can

take." Much more is said by the court, which is in point to this case, for here it is too obvious to remark, that if the city do not pursue their works, they will receive absolutely nothing for what they pay, nor can they sell anything belonging to the purchase, while, in the above case, the purchasers might probably have sold to other persons, the eight acres of land. The same is decided in *Stuart* v. *The L. N. W. R. R. Co.*, 11 Eng. L. & E., 112. Lord Cranworth says: "The ground, on which we proceeded in *Webb*, &c., was this; that, whether it was a contract or not, the circumstances of the case made it such, that it was not fit for this court to interfere by way of specific performance, because these two circumstances conspired; first, that complete relief might be obtained at law, if the parties were entitled to any relief, and, secondly, the principle of mutuality wholly failed, for it was impossible for the company to hold the land for their benefit, in consideration of the money they were to pay." So in *Gooday* v. *The C. & S. V. R. R. Co.*, 15 Eng. L. & E., 596, a case of similar character, where the company had not taken possession of the land, and had abandoned, forever, the project contemplated; the master of the rolls says, "had there existed any such contract, then it has been settled as a rule of law, by recent cases, that assuming a contract to have existed between an individual and a railway company, and if the undertaking had been abandoned, the court will, nevertheless, in the exercise of its discretion, send the case to law, instead of granting specific performance." We think the good sense of these decisions must commend itself to the approbation of every person, the moment he hears them, and that the doctrine they contain, is as applicable, and as important in this country as in England.

In coming to this conclusion, it will of course be understood, as already stated, that we do not mean to give an opinion, one way or the other, upon the validity of Mr. Whitney's contract. That question is left open and un-

touched, as there may be an action at law, for the breach of the contract.

There was another question discussed at the bar, which we notice only to say, that it is unimportant in the view in which we dispose of the case. We mean, the effect of the act of 1854, and the succeeding vote of the city of New Haven. Was this act constitutional, and does the vote of the city impair any of the rights of Mr. Whitney, and if so, what is the operation of the saving clause of the act, in preventing it?

For these reasons, we advise that the bill be dismissed with costs.

In this opinion the other judges concurred.

Bill dismissed.